BAILES, Judge.
The plaintiffs, Jean Tardan and twenty-five other named persons alleging themselves to be the legal heirs of the deceased Jules Lapene, bring this mandamus proceeding against the Honorable Jimmie H. Davis, (then) governor of the State of Louisiana, and the Honorable Ellen Bryan Moore, Registrar, State Land Office of the State of Louisiana, to force the defendants to issue to them a patent to certain described lands alleged to be situated in Sections 30 and 31 of Township 23 South, Range 23 East, La-fourche Parish.
Upon the filing of this suit, the trial court ordered that a writ of mandamus issue to the defendants, directing them to comply with the demands of the plaintiffs or to show cause to the contrary at a designated hour on October 21, 1963. In due course and prior to the trial of the matter, defendants filed an answer to the demand of the plaintiffs. The rule to show cause was heard by the trial court on the allotted date, however, the matter was held open for certain additional filings, and during this period of time and prior to submission to the court for adjudication, defendant filed a peremptory exception of nonjoinder of an indispensable party, this is, the State of Louisiana. This exception was sustained and the plaintiffs’ suit was dismissed. Plaintiffs appeal.
For a cause of action, the plaintiffs aver that on June 7, 1883, the late Jules Lapene was given a Treasurer and Receiver’s Office receipt for the sum of $29.18, being in full payment of the purchase of the following described property, to-wit: Lot 4, SW 54 of SE 54 of Section 30 and all east of the east fork of Bayou Lafourche of Section 31, Township 23 South, Range 23 East, containing 233.47 acres; that the State Treasurer and Receiver of the State Land Office and the Governor of the State of Louisiana failed to issue to Jules Lapene a patent for the above described lands; that at the time of the issuance of the above described receipt, the said land had previously *730 been designated for military purposes by the United States; that under instructions from the Commissioner of the General Land Office (in Washington, D. C.) dated December 10, 1913, the property previously sold to Jules Lapene, was surveyed by a U. S. surveyor and that at that time the above described property was acquired by the State of Louisiana; that plaintiffs are entitled to be issued a patent to said lands; that the issuance of a patent is a mere ministerial act; that the defendants have arbitrarily, wrongfully, illegally and without cause or legal justification refused to issue a patent on said lands to plaintiff, although demand for the issuance of the patent has been made by plaintiffs. Plaintiffs further aver that “The State of Louisiana has acquired title to the aforesaid property; the heirs of Jules Lapene have presented the treasurer’s receipt for the purchase of same; all the provisions of law have been performed; there is no legal impediment in respect to the State alienating such property ; nothing remains to be done except the issuance of a patent; the issuance of a patent is a mere ministerial act; and the Governor and Register may be compelled to do so by mandamus.”
The essence of the defendants’ position is succinctly stated in Article VII of their answer, as follows:
“Answering paragraph VII of plaintiffs’ petition, respondents deny that the State of Louisiana acquired the property as described in paragraphs II and V of plaintiffs’ petition in the manner set forth in paragraph V of plaintiffs’ petition, or in any other manner, although respondents aver that the State of Louisiana did subsequently, by virtue of its inherent sovereignty, become the owner of the property so described, when, as a consequence of erosion, that property became a portion of the bed of the Gulf of Mexi- ”
Before proceeding further, for a better understanding of the background of the State’s role in disposition of the swamplands of Louisiana, it appears appropriate that a consideration be given to the early laws and procedure in vogue for the acquisition of swamp lands by the general public contemporaneous with the time the receipt was issued to the late Jules Lapene. It appears from the record that the lands in question were first surveyed in October,. 1837, and the platting thereof was approved in May, 1842. By executive order of March 25, 1844, the subject land was reserved for military purposes, and by the said executive-order were declared not subject to the swamp-land grants. In August, 1850, the State of Louisiana, apparently unaware of the fact that the subject land had been reserved for military reservation, selected certain lands, including those in contest herein. This selection by the State of Louisiana was pursuant to the Swamp Lands Grant Act of March 2, 1849.
Chronologically, the next act of any one affecting the subject land, was the acquisition by Jules Lapene of the receipt from the Treasurer and Receiver’s Office of the payment of the sum of $29.18. It would appear from the record that Jules Lapene had no knowledge of the executive order above referred to wherein the subject land was placed in a military reservation and not subject to the swamp land acquisition procedures.
The subject lands, according to the plat of survey, made and approved as indicated supra, at the time of the survey were located adjacent to and abutting the Gulf of Mexico.
In following the course he pursued, Jules. Lapene followed the procedure in vogue at that time. For some reason better known to him, he wanted this particular land, he found it listed in the appropriate land or tract book in the State Land Office, made claim thereto and advanced the purchase price therefor, all pursuant to Act 75 of 1880. This assured Jules Lapene a patent to said land in the event the state’s selection of the same should be approved.
*731 By executive order of President Grover 'Cleveland, dated September 23, 1886, wherein the President noted that certain military reservations in the State of Louisiana were no longer needed for military purposes, the ■said lands were placed under the control •of the Secretary of Interior for disposition as provided for by Act. of Congress of July .5, 1884.
Following the detailed procedure set ■forth in this Act of Congress of July 5, 1884, the Secretary of Interior caused the land to be surveyed and appraised preparatory to disposition by the State of Louisiana •under specific instructions and directions of the Department of the Interior. In December, 1913, the Commissioner of the General Land Office ordered a survey of all lands remaining in the military reservations de•clared useless for military purposes in the executive order of President Cleveland, su•pra. The surveyor directed by the Commissioner of the General Land Office to do ■this surveying was one Fred N. Wardwell. The plat he made of his survey, which was ■completed in 1914, shows that of the subject lands originally placed in the military reservation by executive order of March 25, 1844, only a small tip of Section 30 described supra remained as land above water level containing from ten to twelve acres. This small acreage however was not a portion of the land intended to be purchased by Jules Lapene in 1883.
For some reason not reflected by the record in this case, the State of Louisiana was not notified until March, 1916 that the state’s selection of the swamp land under the Swamp Land Grant Act in August, 1850, was rejected because the lands involved had been set aside for military purposes and placed in a military reservation.
It is important to observe that in none of the correspondence filed in the record of this case on the trial hereof in the lower ■court is there any mention whatever made of the land described in the receipt acquired by Jules Lapene in 1883. The obvious reason for this being that, as shown by the Wardwell survey, this property now forms a part of the bed of the Gulf of Mexico. Also, it is pertinent to note that both plaintiffs and defendants'admit that the subject property now forms a part of the bed of the Gulf of Mexico.
It is the contention of the plaintiffs that they are entitled to be issued the patent they seek to the subject land under the doctrine of after acquired title. It is their position that where one sells another’s property and the seller later acquires title thereto, such title inures to the vendee’s benefit. Stated more plainly, the plaintiffs contend that the State of Louisiana sold to Jules Lapene certain land to which it did not have title, however the State of Louisiana did subsequently acquire title to the subject land when it became, by erosion, a part of the bed of the Gulf of Mexico, and when this occurred, the title thereto inured to Jules Lapene and successively to them as his legal heirs.
On the other hand, it is the position of the defendants that the State of Louisiana never at anytime acquired title to the subject property as swamp land under the Swamp Land Grant Act of March 2, 1849, but rather under the inherent sovereignty of the State of Louisiana; that inasmuch as it was acquired under the inherent sovereignty of the State, it is not subject to patent and certainly not in the manner sought by plaintiffs.
In considering the exception of nonjoin-der of an indispensable party, which is the only thing before us on this appeal, it is abundantly clear that the question to be resolved in the issue raised by the plaintiffs’ pleadings is title to land, or bed of the Gulf of Mexico and inasmuch as title to this land submerged and part of the bed of the Gulf of Mexico is certainly now in the State of Louisiana, the State of Louisiana is an indispensable party to this litigation.
For the foregoing reasons, the judgment appealed from is affirmed. Plaintiffs to pay all costs of court.
Judgment affirmed.